UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KAROLYNN MILLER, LLOYD
MILLER,

      Plaintiffs,

v.

MANISTIQUE LODGE, NO. 632
BENEVOLENT AND PROTECTIVE
ORDER OF THE ELKS OF THE UNITED
STATES OF AMERICA,

      Defendant.
      _____/

File No. 2:15-cv-00003

HON. ROBERT HOLMES BELL

# **O P I N I O N**

Plaintiffs Karolynn and Lloyd Miller filed this premises liability action after Karolynn, a 71-year-old Naples, Florida resident, slipped, fell, and sustained injuries while trying to reenter Defendant Manistique Lodge, No. 632 Benevolent and Protective Order of the Elks of the United States of America (the "Lodge"). (Compl. ¶ 7.) The Lodge is located at 213 Walnut Street, Manistique, Schoolcraft County, Michigan. (*Id.* ¶ 5.) The matter is before the Court on Defendant's motion for summary judgment. (ECF No. 19.) Plaintiffs filed a response (ECF No. 21), to which Defendant filed a reply (ECF No. 22). For the reasons that follow, Defendant's motion for summary judgment will be denied.

## I.

On July 5, 2013, Plaintiffs Karolynn and Lloyd Miller, a married couple and residents of Naples, Florida, arrived at the Lodge at 4:30 p.m. to attend a fish fry with members of Lloyd's family. (Answer to Interrog. No. 62, ECF No. 19-1.) The Lodge has only one entrance. (K. Miller Dep. at 5, ECF No. 19-2.) A stairway leads to an exterior door of the Lodge. (ECF No. 19-4, PageID.102.) Upon opening the exterior door, an aluminum threshold bridges the concrete outside with a small downward ramp. (*Id.* at PageID.104.) There is a small "ridge" where the aluminum threshold and concrete meet. (*Id.* at PageID # 109; ECF No. 21-3, PageID.190.) At the bottom of the ramp is a carpeted interior hallway. (ECF No. 19-4, PageID.104.) When Karolynn first walked inside the Lodge, she noticed that the way her foot touched the door step was "strange," but she had no trouble entering. (*Id.*) She stated that she looked down at where she was walking while stepping through the doorway, but she did not notice anything unusual. (K. Miller Dep. at 6, ECF No. 19-2.)

Karolynn ate dinner with Lloyd's family and consumed four alcoholic drinks throughout the night. (Emergency Room Note, ECF No. 19-3.) At some point, Karolynn went out to the front porch. Upon opening the exterior door to reenter the Lodge, Karolynn fell. The complaint and answers to interrogatories indicate that Karolynn fell because she was unaware that the ramp existed. (Compl. ¶ 7, ECF No. 1) ("Upon reentering the lodge after stepping out onto the front porch . . . [Karolynn] stepped onto the threshold of the outside doorway, which unbeknownst to her was ramped downward on the inside, and slipped and

2

fell onto the floor[.]"). When asked to describe in detail her version of the events, Karolynn stated:

> I opened the first door and stepped on the threshold and boom! I noticed after the fact that there was a short ramp of about seven to eight inches and it had propelled me forward. I fell into the three or four foot space extremely hard and I landed on my right shoulder. I tried to stop myself from falling, but there was nothing to grab on to that would help me.

(Answer to Interrog. No. 62, ECF No. 19-1.)

Karolynn's deposition testimony tells a different story. There, she indicates that her foot tripped on the ridge between the aluminum threshold and the concrete.

> A: . . . .When I went back my foot tripped under the threshold. Then I could–I mean, after I fell and got up we could when my foot stepped under there, it tripped me, propelled me forward, there was no railing to catch on and that was it.
>
> Q: When you say your foot tripped under the threshold, did you stub your toe more or less?
>
> A: My shoe just kind of went under like–I don't know how.

(K. Miller Dep. at 7-8, ECF No. 19-2.) Plaintiffs offer a visual depiction of how Karolynn tripped, *see* ECF No. 21-3, PageID.190.

Plaintiffs' response to Defendant's motion for summary judgment adopts this theory, stating that Karolynn's "left foot tripped on a gap located under the entry door's threshold and adjacent to an adjoining concrete porch." (ECF No. 21.) Karolynn was taken to the hospital by her husband and her sister-in-law, and checked into the emergency room at 8:34 p.m. (Emergency Room Note, ECF No. 19-3.)

As a result of the injuries and associated costs, Plaintiffs bring a claim of premises

3

liability against the Lodge under Michigan law, seeking money damages. (Compl. ¶¶ 10-14, ECF No. 1.)

## II.

The Federal Rules of Civil Procedure require the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[T]he district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Martin v. Cincinnati Gas & Elec. Co.*, 561 F.3d 439, 443 (6th Cir. 2009) (citing *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007)). Nevertheless, a "plaintiff must do more than rely merely on the allegations of her pleadings or identify a 'metaphysical doubt' or hypothetical 'plausibility' based on a lack of evidence; [a plaintiff] is obliged to come forward with 'specific facts,' based on 'discovery and disclosure materials on file, and any affidavits[.]'" *Chappell v. City of Cleveland*, 585 F.3d 901, 912 (6th Cir. 2009) (quoting Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586-87). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *see generally Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).

4

**III.**

Plaintiffs raise one count of premises liability under Michigan law. "Michigan law distinguishes between claims arising from ordinary negligence and claims premised on a condition of the land." *Buhalis v. Trinity Continuing Care Servs.*, 822 N.W.2d 254, 258 (Mich. Ct. App. 2012). If a plaintiff's injury arises from an allegedly dangerous condition on the land, the claim is one of premises liability rather than ordinary negligence. *See id.* In a premises liability action, the plaintiff must still prove the elements of negligence: (1) that the defendant owed a duty to the plaintiff; (2) that the defendant breached that duty; (3) that the breach proximately caused the plaintiff's injury; and (4) that the plaintiff suffered damages as a result of the breach. *Benton v. Dart Props., Inc.*, 715 N.W.2d 335, 338 (Mich. Ct. App. 2006). It is undisputed that Karolynn was injured. The parties dispute whether Defendant breached a duty and whether that breach proximately caused Karolynn's injury.

**A. Duty**

The duty owed by a landowner to a person who is on the land depends on the status of the visitor. *See Hampton v. Waste Mgmt. of Mich., Inc.*, 601 N.W.2d 172, 175 (Mich. Ct. App. 1999). Plaintiffs were invitees.

> Section 343 [of the Restatement of Torts] provide[s]: "A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> > (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> >
> > (b) should expect that they will not discover or realize the danger, or will

fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger."

*Bertrand v. Alan Ford, Inc.*, 537 N.W.2d 185, 186 (Mich. 1995) (quoting Restatement (Second) of Torts § 343 (1965)) (alteration omitted). "A claim that the invitor has breached the duty to exercise reasonable care to protect invitees from unreasonable risks of harm has traditionally been premised on three theories: failure to warn, negligent maintenance, or defective physical structure." *Id.* at 610.

A possessor of land owes no duty, however, to protect or warn invitees of "dangers that are open and obvious, because such dangers, by their nature, apprise an invitee of the potential hazard, which the invitee may then take reasonable measures to avoid." *Hoffner v. Lanctoe*, 821 N.W.2d 88, 94 (Mich. 2012). "Whether a danger is open and obvious depends on whether it is reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection." *Id.* at 94-95. This standard is not subjective, but instead calls "for an examination of 'the objective nature of the condition of the premises at issue.'" *Id.* at 95 (quoting *Lugo v. Ameritech Corp., Inc.*, 629 N.W.2d 384, 390 (Mich. 2001)).

**1. Knowledge of Unreasonable Risk of Harm**

Defendant argues it did not have knowledge that the entryway posed an unreasonable risk of harm because "[t]here had not been a single customer complaint that day leading up to Plaintiff's fall, nor had any other customer demonstrated difficulty navigating the threshold of the entry door." (*Id.* at 5.) Karolynn Miller, however, tells a different story.

Karolynn stated that the Lodge's manager told her that 19 other patrons had tripped in the doorway in the same manner that Karolynn did. (Pls.' Br. in Opp'n to Def.'s Mot. Summ. J. 11, ECF No. 21; K. Miller Dep. at 25-26, ECF No. 21-1.)

Defendant does not address Karolynn's statement that she was told of 19 others who have tripped in the entryway. Given the conflicting claims, the Court finds that a question of fact exists as to Defendant's knowledge of the danger presented by the doorway. Accordingly, Defendant's purported lack of knowledge does not lead to a grant of summary judgment.

### 2. Open and Obvious Doctrine

Defendant next argues that any danger presented by the entryway was open and obvious and, therefore, the duty to exercise ordinary care does not apply. (Def.'s Mot. Summ. J. 9, ECF No. 19.) Plaintiffs argue that "the unmarked gap located under the entryway's threshold was neither open nor obvious." (Pls.' Br. in Opp'n to Def.'s Mot. Summ. J. 14, ECF No. 21.) In a premises liability case, "[i]f reasonable minds could differ as to whether a risk is open and obvious, 'the obviousness of risk must be determined by the jury.'" *Wasaya v. United Artist Theatre Circuit, Inc.*, 205 F. Supp. 2d 756, 759 (E.D. Mich. 2002) (quoting *Glittenberg v. Doughboy Recreational Indus.*, 491 N.W.2d 208, 217 (Mich. 1992)); *see also Price v. Kroger Co. of Mich.*, 773 N.W.2d 739, 742 (Mich. Ct. App. 2009) (finding a "material question of fact regarding whether the danger posed by the protruding wire qualified as open and obvious, [so] a jury must make this factual determination").

In support of Plaintiffs' argument that the ridge connecting the aluminum threshold and the concrete was not open and obvious, Plaintiffs again note that the manager told Karolynn that 19 others have tripped in the same manner that she did. Further, Karolynn testified that when she entered the Lodge at 4:30 p.m., she looked down at the entryway, but did not notice the ridge. "There's nothing you could discern. I did look, but there was nothing that you could discern from that. [The concrete and aluminum is] all one kind of color and it all blended together." (K. Miller Dep. at 6, ECF No. 21-1.) Karolynn stated that when she walked inside the second time and tripped, she also looked down at where she was going, but did not see the ridge. (*Id.* at 13.) "It was too dark. You couldn't discern anything with that darkness. There was no light in there. There was nothing. You could not tell." (*Id.*) Lloyd Miller also stated that it was dark at the time Karolynn fell:

> Q: And what was the lighting at the time at the exit door when you walked through it to take her to your car?
>
> A: It was dark.
>
> Q: You're telling us there are no artificial lights illuminating the threshold, the doorway, the entryway, exit way?
>
> A: No.

(L. Miller Dep. at 7, ECF No. 21-2.)

While Plaintiffs believe Karolynn tripped sometime after 9:00 p.m., Defendant points out that the hospital record shows Karolynn arrived at 8:34 p.m. (Emergency Room Note, ECF No. 19-3.) Defendant offers photographs taken in July 2015 at 8:00 p.m. in "clear" conditions to demonstrate that, at this time, it was not dark. (Ex. D, ECF No. 19-4.)

Defendant also offers the hourly weather conditions for July 5, 2013, in Manistique, Michigan from the website "http://www.wunderground.com." (Ex. F, ECF No. 19-6.) This website notes that the conditions were "Clear" between 7:55 p.m. and 8:15 p.m. (*Id.*) Defendant also produced an affidavit from James Gaffney, the Treasurer of the Lodge, who stated that there were operational fluorescent lights on the ceiling of the interior hallway on July 5, 2013. (Gaffney Aff., ECF No. 19-7.) The affidavit does not state whether the operational lights were turned on.

While Defendants offer evidence showing that the conditions in Manistique were clear on July 5, 2013, both Karolynn and Lloyd Miller stated that it was dark. The Court has reviewed the photographs submitted by each party and finds that, even if the conditions were clear and light outside, reasonable minds could differ as to whether the ridge connecting the concrete and aluminum threshold was open and obvious. Accordingly, the question is best left for the jury. *Price*, 773 N.W.2d at 742.

Defendant cites numerous cases discussing the "special aspects" inquiry of the open and obvious doctrine. If a hazard is "open and obvious," there is no duty protect invitees unless "*special aspects* of a condition make an open and obvious risk *unreasonably dangerous*." *Hoffner*, 821 N.W.2d at 91 (emphasis in original).[1] But there is no need to

---

[1] The Michigan Supreme Court has indicated that a "special aspect" can exist in one of two scenarios–when there is a "uniquely high likelihood of harm" or when the harm presented is uniquely dangerous. *Lugo*, 629 N.W.2d at 387-88. The Court noted that a "uniquely high likelihood of harm" could exist when the only exit in a commercial building was covered in standing water because the "open and obvious condition is effectively unavoidable." *Id.* at 387. To illustrate a uniquely dangerous situation, the Court gave the example of a 30-feet-deep open pit in the middle of a parking lot. *Id.* There, the Court reasoned that despite the openness and obviousness, "this situation would present such a

(continued...)

engage in a special aspects inquiry if the hazard is not open and obvious. *See Mann v. Shusteric Enters., Inc.*, 683 N.W.2d 573, 578 (Mich. 2004) ("[A] premises possessor has a duty to protect an invitee from dangers that are *either* not open and obvious, *or*, although open and obvious, contain special aspects that make such dangers unreasonably dangerous.'") (emphasis added) (quotation marks and citation omitted)). Because the Court finds that a question of fact exists as to whether the ridge was open and obvious in this case, an analysis of whether a special aspect of an open obvious hazard makes the condition unreasonably dangerous is premature.

Defendant also cites to numerous cases where the plaintiffs admitted that they could have seen the hazard if they were paying attention and, therefore, the courts found the hazards were open and obvious. *See Millikin v. Walton Manor*, 595 N.W.2d 152 (Mich. Ct. App. 1991); *Franklin v. Peterson*, No. 208964 (Mich. Ct. App. Aug. 17, 1999) (unpublished per curiam opinion); *Allen v. CDM Enter. d/b/a/ Longbranch Saloon*, No. 30994 (Mich. Ct. App. Jan. 17, 2013) (unpublished opinion); *Campbell v. H.J. Larson, Inc. d/b/a/ Holiday Inn of Marquette*, No. 308496 (Mich. Ct. App. May 30, 2013) (unpublished opinion). The facts in this case are distinguishable. Unlike the plaintiffs in those cases, Karolynn stated that she did look down while crossing the threshold and did not notice the ridge. (K. Miller Dep. at 6, 11, 13, ECF No. 19-2.)

---

(...continued)
substantial risk of death or severe injury that it would be unreasonably dangerous to maintain the condition, at least absent reasonable warnings or other remedial measures being taken." *Id.*

Lastly, Defendant cites to *Bertrand*, where the Michigan Supreme Court stated "[u]nder ordinary circumstances, the overriding public policy of encouraging people to take reasonable care for their own safety precludes imposing a duty on the possessor of land to make ordinary steps 'foolproof.'" 537 N.W.2d at 189. The Court noted that a "general rule emerged that steps and differing floor levels were not ordinarily actionable *unless* unique circumstances surrounding the area in issue made the situation unreasonably dangerous." *Id.* at 188 (emphasis in original). The Court also stated, however, that "where there is something unusual about the steps . . . the duty of the possessor of land to exercise reasonable care remains." *Id.* at 189. In this case, viewing the evidence in the light most favorable to Plaintiffs, a reasonable jury could find that the ridge between the concrete and aluminum threshold was "unusual," and that Defendant thus had a duty to exercise reasonable care.

**B. Causation and Contributory Negligence**

Defendant also argues that Plaintiffs do not meet their burden of showing that Defendant's negligence caused Karolynn's injury. Defendant cites to *Skinner v. Square D Co.*, 516 N.W.2d 475 (Mich. 1995). In *Skinner*, after the plaintiff was electrocuted, the plaintiff's estate alleged that the plaintiff's death was caused by a defective switch on a homemade tumbling machine. *Id.* at 477. The "plaintiffs proposed an hypothesis under which Mr. Skinner thought that the machine was off because of a faulty indication from the switch, the power was actually on, but the machine was not running because the wires were not attached to the alligator clips." *Id.* at 477-78. Given that the plaintiff had died and could not testify, that "the only record evidence pertaining to how the wires and clips were maintained

indicated that they probably would have been connected," and that no other evidence supported this hypothesis, the Court stated "[t]here must be more than a mere possibility that unreasonable conduct of a defendant caused the injury. We cannot permit the jury to guess." *Id.* at 481.

Unlike *Skinner*, in this case, the jury will not simply be guessing as to how the injury occurred, but will be able to make a reasoned decision after hearing testimony from the injured plaintiff.

Finally, Defendant argues that Plaintiffs are barred from recovery under Mich. Comp. Laws § 600. 2955a(1), which states:

> It is an absolute defense in an action . . . for injury to a person or property that the individual upon whose death or injury the action is based had an impaired ability to function due to the influence of intoxicating liquor or a controlled substance, and as result of that impaired ability, the individual was 50 percent or more the cause of the accident or event that resulted in the death or injury.

Mich. Comp. Laws § 600.2955a(1). Defendant cites *Lamphiere v. Abraham*, No. 306354 (Mich. Ct. App. Oct. 30, 2012) (unpublished opinion), which upheld the district court's grant of summary judgment finding that no issue of material fact existed as to whether the plaintiff's intoxication was "more the cause of injuries than any other cause." Defendant argues that "[r]easonable minds could not differ in that Plaintiff's behavior and state of mind accounted for 50 percent or more of the circumstances leading up to and surrounding her injury-producing event that morning." (Def.'s Mot. Summ. J. 20, ECF No. 19.) The Court disagrees. In *Lamphiere*, the plaintiff's blood alcohol level "was more than three times the legal limit and he admitted that he also smoked marijuana." *Id.* at *2. "Numerous partygoers

. . . recalled that plaintiff was highly intoxicated[.]" *Id.* "Plaintiff himself admitted that he was partially at fault for his injuries because of his intoxication." *Id.* In this case, however, there is no such testimony. The admitting physician at the hospital Karolynn checked into noted that Karolynn was a "pleasant" woman. (Emergency Room Note, ECF No. 19-3.) While Karolynn's intoxication may have accounted for 50 percent or more of the circumstances leading to her injury, the apportionment of fault is a question best left for the jury.

## IV.

For the reasons stated above, Defendant's motion for summary judgment will be denied. An Order will enter consistent with this Opinion.


Dated: December 1, 2015 /s/ Robert Holmes Bell
ROBERT HOLMES BELL
UNITED STATES DISTRICT JUDGE